FILED

2011 Mar-31  PM 04:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **HSBC BANK USA,** | } | |
| | } | |
| **Appellant,** | } | |
| | } | |
| **v.** | } | **CASE NO. 5:10-cv-02058-SLB** |
| | } | |
| **WILLIAM F. PERKINS in his capacity** | } | |
| **as Liquidating Trustee for Bill Heard** | } | |
| **Enterprises, Inc.,** *et al.,* | } | |
| | } | |
| **Appellee.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on appeal from a judgment of the United States

Bankruptcy Court for the Northern District of Alabama granting summary judgment in

favor of Appellee Twentieth Century Land Corporation ("Twentieth Century") and

against Appellant HSBC Bank USA, as Trustee for the Registered Holders of Falcon

Auto Dealership Loan Trust 2003-1 Loan Backed Bonds ("HSBC"). (*See* docs. 1-3 & 1-

4.)[1]  Upon consideration of the record, the submissions of the parties, and the relevant

---

[1]  Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in this court's record on appeal. Reference to a bankruptcy court document number, ["B.P. Doc. ___"], refers to the number assigned to each document as it was filed in the bankruptcy court's record of the underlying bankruptcy petition action, bankruptcy petition # 08-83029-JAC11.  Reference to a bankruptcy court document number, ["B.C. Doc. ___"], refers to the number assigned to each document as it was filed in the bankruptcy court's record of adversary proceeding # 09-80023-JAC, which was a separate adversary proceeding filed by Twentieth Century, one of the jointly administered debtors that joined in petition # 08-83029-JAC11. The bankruptcy court's final Memorandum Opinion from adversary proceeding # 09-80023-JAC, entered contemporaneously with the Judgment appealed from, is reported as *In re Bill Heard Enterprises, Inc.*, 420 B.R. 860 (Bankr. N.D. Ala. 2009), and appears as "Doc.1-3" in this court's record on appeal.  The bankruptcy court's Memorandum Opinion tentatively granting

law, the court finds that the decision of the bankruptcy court is due to be reversed and the case remanded for further proceedings not inconsistent with this Memorandum Opinion.

## I.  **FACTUAL AND PROCEDURAL HISTORY**

The facts of this case are undisputed.  This appeal focuses on the bankruptcy court's application of the law to the undisputed facts.  Therefore, the court fully sets forth herein the factual background from the bankruptcy court's Memorandum Opinion, (doc. 1-3), below:

> The property at issue is located at 911 North Freeway, Houston, Texas [("the subject property")]. Landmark Chevrolet has operated a Chevrolet franchised dealership on the property since the 1970's.  On October 1, 1985, Twentieth Century purchased the subject property.
>
> In October of 1985, [Bill Heard Enterprises, Inc.] [("]BHE["]], through Landmark Chevrolet Corporation which is now known as Landmark Chevrolet, Ltd., purchased the Chevrolet dealership ("Landmark Chevrolet") and Twentieth Century leased the property to the dealership. At all times, Landmark Chevrolet operated the automobile dealership on the subject property under the name Landmark Chevrolet. Landmark Chevrolet's operation of the property as an automobile dealership was visible to the public and did not materially change since it first began leasing the property from Twentieth Century in 1985 until the filing of BHE's bankruptcy petition.
>
> Falcon Financial, LLC ("Falcon"), is a company that specializes in lending to automobile dealerships. In October of 2002, Falcon agreed to make a $20,000,000.00 loan to BHE. To make the loan, Falcon required BHE to form a "bankruptcy remote single purpose entity" that would act both as the borrower under the loan and owner of the subject property securing the loan. On November 15, 2002, BHE formed the bankruptcy remote single

---

Twentieth Century's motion for summary judgment is reported as *In re Bill Heard Enterprises, Inc.*, 420 B.R. 553 (Bankr. N.D. Ala. 2009), and also appears (via attachment) as "Doc. 1-3" in this court's record on appeal.  References to page numbers in "Doc. 1-3" refer to the page numbers at the top of "Doc. 1-3" as paginated by the Case Management/Electronic Case Filing system.

purpose entity named Landmark North Freeway, Ltd [("Landmark North"), a Texas limited partnership].

On December 4, 2002, as part of the loan transaction, Twentieth Century, as grantor, executed a Warranty Deed conveying the subject property to Landmark North, as grantee. There was no visible change to Landmark Chevrolet's possession or operation of the property after Twentieth Century transferred the subject property to Landmark North.

The December 4, 2002 Warranty Deed transferring the property from Twentieth Century to Landmark North was never recorded. The Warranty Deed, a Deed of Trust by which Landmark North mortgaged the subject property to Falcon, and other loan documents were forwarded to Falcon's counsel who then forwarded the Deed of Trust and other loan documents to the escrow agent, Lawyers Title Insurance Company, for closing and recording. The Warranty Deed was not, however, forwarded to Lawyers Title. The original, unrecorded, Warranty Deed was found in the files of Falcon Financial's counsel during this litigation. Falcon's attorney, Greg Murphy, Esq., testified in his deposition that he did not know the Warranty Deed had not been recorded until he first learned of this lawsuit.

On December 12, 2002, Lawyers Title closed the loan and distributed the loan proceeds as instructed. Landmark North directed that $7,187,393.32 of the loan proceeds be used to satisfy existing mortgages on the property in favor of General Motors Acceptance Corporation ("GMAC"). After the loan closing, GMAC recorded three documents entitled "Release of Lien," which evidenced that three separate GMAC deeds of trust on the subject property had been released. Landmark North also used $317,034.84 of the loan proceeds to pay Twentieth Century's outstanding tax liability. The remaining loan proceeds were advanced directly to BHE to refinance debt it had incurred over time.

On December 23, 2002, Lawyers Title recorded the Deed of Trust in the real property records of Harris County, Texas. Although the Warranty Deed had not been recorded, on December 23, 2002, Lawyers Title issued a final Mortgage Policy of Title Insurance insuring Falcon from any defect in, invalidity or unenforceability in its lien on the subject property. Because the Warranty Deed was not recorded, a claim was made under the title policy and Lawyers Title is providing the defense in this adversary proceeding.

On December 23, 2002, Falcon assigned its interest in the loan documents to ABN AMRO Bank, NV. Subsequently, on July 18, 2003, ABN assigned its interest in the loan documents to HSBC.

In connection with the loan, Landmark North entered into a lease agreement with Landmark Chevrolet for the property. The real property consists of two tracts of land divided into four parcels. The property tax records from the Harris County Tax Accessor-Collector indicate that Landmark Chevrolet is the owner of at least one of the parcels. In addition to the tax records, the Harris County Appraisal District records identify Landmark Chevrolet as the owner of one of the parcels.

Since 1985 and at the time of the loan transaction in 2002, Landmark Chevrolet operated a car dealership, service center and related facilities on the property. The Landmark Chevrolet dealership was located adjacent to Interstate 45, a heavily trafficked freeway that runs through the city of Houston. It is undisputed that Landmark Chevrolet signage was visible to the public throughout the property and that there was no signage anywhere on the property for Twentieth Century nor Landmark North.

(Doc. 1-3 at 19-21 (footnotes omitted).)

On September 28, 2008, BHE and several related entities filed for relief under

Chapter 11 of the Bankruptcy Code and sought joint administration of their petitions.

(B.P. Doc. 1.)  On February 6, 2009, Twentieth Century, one of the jointly administered

debtors, filed a complaint in an adversary proceeding against Landmark North and others

to avoid the prepetition transfer of the subject property to Landmark North pursuant to 11

U.S.C. § 544(a)(3) and to determine the validity, priority, or extent of Landmark North's

interest in the property.  (B.C. Doc. 1.)  Twentieth Century sought to set aside the

prepetition transfer on grounds that the Warranty Deed transferring the property from

Twentieth Century to Landmark North was never recorded and was, therefore, void under

Texas law as to a hypothetical subsequent purchaser for value without notice.  (*Id.*)  On

March 19, 2009, Twentieth Century filed an amended complaint adding HSBC as a

defendant.  (B.C. Doc. 7.)  Through the amended complaint, Twentieth Century sought to

avoid Landmark North's granting of the Deed of Trust to Falcon, HSBC's predecessor in

interest.  (*Id.*)  On March 31, 2009, HSBC filed several counterclaims against Twentieth

Century, including equitable subrogation, subrogation under the Deed of Trust, implied

subordination, equitable lien, declaratory judgment, constructive trust, and unjust

enrichment.  (B.C. Doc. 18.)

    On August 19, 2009, Twentieth Century filed a Motion for Summary Judgment

against HSBC.  (B.C. Doc. 88.)  Twentieth Century sought an order granting summary

judgment as to its claims under the amended complaint and the counterclaims asserted by

HSBC.  (*Id.*)  Also on August 19, 2009, HSBC filed a Motion for Summary Judgment

against Twentieth Century.  (B.C. Doc. 90.)  HSBC sought an order granting summary

judgment on Twentieth Century's amended complaint and partial summary judgment on

its counterclaims against Twentieth Century.  (*Id.*)

    On September 11, 2009, the bankruptcy court entered a Memorandum Opinion and

Order tentatively granting Twentieth Century's Motion for Summary Judgment against

HSBC and denying HSBC's Motion for Summary Judgment against Twentieth Century.

(*See generally* doc. 1-3 at 17-33.)  The bankruptcy court found that Twentieth Century

was entitled to avoid its transfer of the subject property to Landmark North under

§ 544(a)(3) of the Bankruptcy Code because the Warranty Deed transferring the property
to Landmark North was not recorded and a hypothetical purchaser would not have had
notice of documents recorded outside the chain of title.  (*Id.* at 21-24.)  The bankruptcy
court further found that Landmark Chevrolet's possession as a tenant under the written
lease agreement between Landmark Chevrolet and Landmark North was not sufficiently
open, visible, exclusive, and unequivocal to impart constructive notice of Landmark
North's interest in the subject property.  (*Id.* at 25-28.)  The bankruptcy court also found
that Twentieth Century was entitled to summary judgment on the counterclaims asserted
by HSBC. (*Id.* at 28-32.)  The bankruptcy court, however, gave the parties additional time
to submit a statement of disagreement, if any, with the ruling before the bankruptcy court
made its final ruling.  HSBC and Twentieth Century both submitted additional briefs.
(*See* docs. 111, 112, 113 & 114.)  Thereafter, on November 16, 2009, the court entered its
final Memorandum Opinion and Judgment granting summary judgment in favor of
Twentieth Century and against HSBC.  (Docs. 1-3 & 1-4.)  In doing so, the court held that
"a hypothetical purchaser would not have constructive notice of any adverse interest in
the subject property, and Twentieth Century is entitled to avoid the transfer to Landmark
North pursuant to § 544(a)(3)[,]" (doc. 1-3 at 15), that Bankruptcy Code "§ 550(b) does
not apply to Twentieth Century's avoidance of HSBC's mortgage interest" because
"Twentieth Century's avoidance of HSBC's mortgage interest under § 544 is a complete
remedy in and of itself," (*id.* at 28), that "Twentieth Century as a hypothetical bona fide

6

purchaser necessarily prevails over HSBC's alleged contractual subrogation interest[,]" (*id.* at 31), and that Twentieth Century would not be unjustly enriched in the event it could recover title to the subject property free and clear of the Deed of Trust after receiving the benefit of the loan proceeds because "old Twentieth Century will receive no benefit from its recovery under § 544(a)(3)[,]" (*id.* at 32).

On November 24, 2009, HSBC timely filed a notice of appeal.  (*See* doc. 1.)  On September 10, 2010, HSBC filed a Brief of Appellant, HSBC Bank USA.  (*See* doc. 9.) On November 2, 2010, Appellee, William F. Perkins, in his capacity as Liquidating Trustee for Bill Heard Enterprises, Inc., et al. (the "Trustee") filed a Brief of Appellee. (*See* doc. 14.) On November 23, 2010, HSBC filed a Reply Brief of Appellant, HSBC Bank USA.  (*See* doc. 15.)  The matter was thereafter deemed under submission.

## II.  <u>STANDARD OF REVIEW</u>

This court has appellate jurisdiction pursuant to 28 U.S.C. 158(a).  "In reviewing bankruptcy court judgments, a district court functions as an appellate court."  *In re JLJ, Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993).  "[A]n appellate court reviews a bankruptcy court's grant of summary judgment [entirely] *de novo*."  *In re Optical Technologies, Inc.*, 246 F.3d 1332, 1334 (11th Cir. 2001)(citations omitted); *see Carroll v. United States*, 415 B.R. 561, 562-63 (N.D. Ala. 2009)(relying on *Optical Technologies, Inc.* and reviewing the bankruptcy court's entry of summary judgment entirely *de novo*).  Accordingly, because HSBC appeals from an adverse summary judgment ruling, this court reviews the

bankruptcy court's decision *de novo*.

## III. DISCUSSION

HSBC assigns four errors to the decision below. (*See* doc. 9 at 8.) Specifically, HSBC contends that the bankruptcy court (1) "erred in finding that the hypothetical purchaser under section 544 (a)(3) of the Bankruptcy Code would not have been on constructive notice of HSBC's interest in the real property, and therefore not able to achieve bona fide purchaser status[;]" (2) "erred in refusing to extend [Bankruptcy Code] section 550(b)(2)'s protection to HSBC as a mediate transferee without knowledge of the voidability of the Deed of Trust[;]" (3) "erred in refusing to give effect to the express contractual subrogation provisions in the transaction documents[;]" and (4) "erred in rejecting HSBC's unjust enrichment claim where Twentieth Century received a direct benefit from the transaction proceeds." (*Id.*)

11 U.S.C. § 544(a)(3) provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by–
 . . . .
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

*Id.*

Section 544(a)(3) authorizes the trustee or debtor-in-possession to avoid any real

property transfer "that is not perfected and enforceable against a bona fide purchaser at the time the petition is filed." *Matter of Hamilton*, 125 F.3d 292, 298 (5th Cir. 1997)(citations omitted). "The purpose of § 544 is to arm the trustee with sufficient powers to gather in the property of the estate.  Thus, the trustee is considered a *bona fide* purchaser of real property in the bankruptcy estate and may avoid obligations of the debtor that are voidable by such a purchaser." *In re Halabi*, 184 F.3d 1335, 1337 (11th Cir. 1999) (citing 11 U.S.C. § 544(a)(3)).  The parties agree, and the bankruptcy court correctly found, that "the trustee or debtor-in-possession's rights as a bona fide purchaser under § 544 are to be determined under applicable state law, which in this case is Texas law as the subject property is located in Texas and the loan documents provide that Texas law is the governing law state."  (Doc. 1-3 at 22.)

Under Texas law, a bona fide purchaser for value is one who "acquire[s] property in good faith, for value, and without notice of any third-party claim or interest." *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) (citations omitted).  "Notice may be constructive or actual." *Id.* (citations omitted).  Unlike actual notice, which "rests on personal information or knowledge," *id.* (citation omitted), constructive notice "is notice the law imputes to a person not having personal information or knowledge." *Id.* (citation omitted).

In addition to imposing on a purchaser the duty to "search the records," which are "the primary source of information as to title," *Strong v. Strong*, 98 S.W.2d 346, 348

9

(Tex. Comm'n App. 1936) (citations omitted), Texas law expressly imposes on a

purchaser, under certain circumstances, the duty to "make inquiry as to the rights or title

of the possessor, for possession is equivalent to registration . . . ." *Id.* at 348 (citation

omitted).  As recognized by the Texas Court of Appeals in *Melvin R. Storm Family*

*Partners, L.P. v. Northcutt*, 2007 WL 2204170, *2 (Tex. App. Aug. 2, 2007):

> Constructive notice arising from the rights of a party in possession of
> property can be equivalent to the constructive notice resulting from the
> registration of the conveyance of such property. *Chicago Title Ins. Co. v.*
> *Alford,* 3 S.W.3d 164, 169-70 (Tex. App-Eastland 1999, pet. denied). A
> purchaser of property may be charged with notice of the rights of a party in
> possession of the property. *Madison,* 39 S.W.3d at 606. The purchaser has a
> duty to ascertain the rights of parties in possession if that possession is
> visible, open, exclusive, and unequivocal. *Id.; Strong v. Strong,* 98 S.W.2d
> 346, 348-50 (Tex.1936). And, if it is visible, open, exclusive, and
> unequivocal, then that possession constitutes constructive notice of the
> rights under which that property is possessed. *Madison,* 39 S.W.3d at 607;
> *Alford,* 3 S.W.3d at 169.

*Storm Family Partners*, 2007 WL 2204170 at *2.

That said, however, "[p]ossession that could easily be referred to the person in

whom stood the record title is not sufficient" to act as constructive notice of actual

ownership.  *Battros v. Battros*, 1992 WL 695898, *2 (Bankr. W.D. Tex. Feb. 28, 1992)

(quoting *In re Spring Creek Investments of Dallas, N.V., Inc.*, 71 B.R. 157, 159-60

(Bankr. N.D. Tex. 1987) (citation omitted)).  In other words, inquiry is not "mandated by

ambiguous or equivocal possession which may appear subservient or attributable to the

holder of legal title because it is not sufficiently indicative of adverse ownership."

*Battros*, 1992 WL 695898 at *2 (quoting *Spring Creek Investments*, 71 B.R. at 159-60).

10

Thus, as recognized by the bankruptcy court below, to prevail, HSBC must show that Landmark Chevrolet's possession was visible, open, exclusive, and unequivocal and not consistent with Twentieth Century's record title.

HSBC contends that Landmark Chevrolet's possession of the subject property was visible, open, exclusive, and unequivocal, and consequently, under the doctrine of attornment as set forth in *Mainwarring v. Templeman*, 1879 WL 7660 (Tex. 1879) and its progeny, such possession is sufficient to constitute constructive notice of HSBC's claim to a hypothetical bona fide purchaser under § 544(a)(3).  (*See* doc. 9 at 16-46.)   The Trustee, on the other hand, contends that the bankruptcy court "correctly determined that the possession of Landmark Chevrolet was not unequivocal" and was consistent with Twentieth Century's record title. (Doc. 14 at 10-24.)  The court agrees with HSBC.

The Texas Court of Appeals decision in *Melvin R. Storm Family Partners, L.P. v. Northcutt*, 2007 WL 2204170, is instructive. In *Storm Family Partners*, the Melvin R. Storm Family Partners, L.P. ("Storm"), purchased a tract of land consisting of 1,183 acres from the T. Brandt Family Limited Partnership ("Brandt") and recorded the deed on September 30, 2003.   Northcutt claimed an interest arising from an oil and gas lease on 480 acres dated November 19, 2002.  That lease was entered into as a result of negotiations between Northcutt and Brandt prior to Storm's purchase of the property. While the November 2002 lease was not recorded until February 28, 2005, after Storm had purchased the property, Northcutt and its operator had signs on the property making

the tenant's possession visible and open and Northcutt's possession was exclusive as to the 480 acre tract at issue.  *Id.* at \*1.  Storm, upon learning of the November 2002 lease, brought an action to remove the cloud on its title.  The trial court found that Storm was not a bona fide purchaser for value without notice of Northcutt's rights because Storm was on constructive notice of Northcutt's rights as a tenant under the unrecorded November 2002 lease.  Storm appealed. *Id.*

On appeal, Storm argued, that any possession by Northcutt was not exclusive and unequivocal, that the evidence was legally and factually insufficient to constitute constructive notice of Northcutt's rights, that Northcutt's possession was consistent with the former lease, and that it was a bona fide purchaser of the property.  *Id.* The Texas Court of Appeals disagreed.  In affirming the judgment of the trial court in favor of Northcutt, the court held that:

> [T]he evidence legally and factually supports the trial court's finding that appellant was not a bona fide purchaser because appellee was a person in visible, open, exclusive, and unequivocal possession of the oil and gas interest on the 480 acres at the time that appellant purchased the property and, as such, that appellant had constructive notice of the rights of appellee, was charged with the responsibility of determining those rights, and took its title subject to them. **Appellant argues that it should not be charged with constructive notice for the further reason that appellee's possession was consistent with the former lease under which appellee operated. We disagree. The rights of appellee, the party in possession, were determined by the 2002 oil and gas lease, and appellant is charged with constructive notice of those rights**.

*Id.* at \* 4 (emphasis added).

The bankruptcy court found that *Storm Family Partners* "is clearly distinguishable

from the facts of this case . . . because in the case before the Court the rights of the third-party tenant, Landmark Chevrolet, are not in question.  Here, a third-party tenant, Landmark Chevrolet, not the claimant, Landmark North, possessed the subject property. Unlike the *Storm* case, the rights of the party in possession are simply not in question." (Doc. 1-3 at 25.)  Similarly, the Trustee contends on appeal that *Storm Family Partners* is distinguishable because "the case concerns only the rights of the tenant where we are concerned here with notice of the rights of a separate landlord."  (Doc. 14 at 24.) However, under Texas law, "[t]he rule is too well settled to admit of discussion that **possession of land by tenant constitutes notice of the landlord's right in the land** . . . ."  *McWhorter v. Oliver*, 2 S.W.2d 281, 284 (Tex. App. 1928) (citations omitted)(emphasis added); *see, e.g.*, *Collum v. Sanger Bros.*, 82 S.W. 459, 460 (Tex. 1904) ("That possession by a tenant is equivalent to the possession of his landlord as to the question of notice is the settled law of this court.") (citations omitted); *Houston Oil Co. of Texas v. Choate*, 232 S.W. 285, 288 (Tex. App. 1921) ("The possession of a tenant is notice of the rights of his landlord.").

Here, as in *Storm Family Partners*, the party in possession, Landmark Chevrolet, was a tenant, governed by a written lease agreement. The possession of the property was exclusive to Landmark Chevrolet.  There were Landmark Chevrolet signs on the property making it visible and open as an automobile dealership.  There were no signs on the property for either Landmark North or Twentieth Century. Landmark Chevrolet operated

under a lease agreement before and after the sale, except in this case the lease did not remain with Twentieth Century. The Twentieth Century lease terminated, and a new lease was entered into with Landmark North. Landmark Chevrolet's possession of the subject property was no more subservient or attributable to Twentieth Century than it was to HSBC. In other words, the possession in this case was, from the perspective of an outsider, in no way attributable to Twentieth Century.

The Trustee emphasizes the affiliation between Twentieth Century and Landmark Chevrolet, (doc. 14 at 13), and contends that since nothing changed after the unrecorded transfer, "[t]o an outsider, it would appear just as likely that Twentieth Century, because of its close affiliations with Landmark Chevrolet, had clear title to the property." (*Id.* at 18.) The Trustee maintains that "[i]t would be reasonable for a person, upon understanding the relatedness of the parties, to inquire no further." (*Id.*) As HSBC correctly points out, the Trustee "does not explain how a potential purchaser, much less a hypothetical purchaser, would ever attain such an understanding" of the interrelatedness of Twentieth Century and Landmark Chevrolet. (Doc. 15 at 3.) And, based on the undisputed facts of this case, the court concludes that an outsider could not attain such an understanding simply by virtue of Landmark Chevrolet's possession. The Trustee contends that "the parties are so related that a purchaser would not find title ownership in Twentieth Century to be inconsistent with the physical condition of the property . . .." being leased by the record title holder's affiliate. (Doc. 14 at 13.) But that is not the

14

controlling test.[2]  The Trustee has not referred the court to any authority to support the proposition that common affiliation between a possessor and a record title holder, which are separate and distinct legal entities, eliminates the duty to inquire when the possession is, as the court finds it was as a matter of law in this case, open, visible, exclusive, and unequivocal.  Landmark Chevrolet, as the sole possessor, operated the automobile dealership under the name Landmark Chevrolet and there was no outward indicia of ownership consistent with Twentieth Century's record title.  Accordingly, a hypothetical

---

[2] Indeed, the Trustee's "close affiliation" argument appears to be foreclosed by *Strong v. Strong*, 98 S.W.2d at 348-49.  In *Strong*, the children of defendant Manuel Strong and his first wife, Nancy, sued Manuel Strong, his second wife, Minnie, and Sun Oil Company for title to an undivided 15/32 interest in a 50.5 acre tract of land.  *Id.* at 347. The approximately 50 acre tract was the community property conveyed to Manuel Strong and his first wife during their marriage. Manuel Strong and his second wife admitted the allegations that the children owned the 15/32 interest in the land, but Sun Oil Company attempted to assert ownership of oil and gas under an oil and gas lease that touched the undivided interest claimed by the children.  The oil company argued that it was an innocent purchaser for value without notice.  *Id.*  The appellants attempted to negate that status by arguing there existed in the community where the land was situated notoriety or the general reputation that the appellants had an interest in the land and that therefore there were facts and circumstances in evidence that were reasonably sufficient to put the oil company on inquiry as to the title and claims of the appellants.  *Id.*  The *Strong* court noted that there was no evidence showing or tending to prove that anyone representing the oil company knew of the existence of the common knowledge or reputation or that he or she would have learned of such knowledge or reputation.  *Id.*  The court found no good reason to impose on a purchaser the added burden of ascertaining the ownership reputation of land within a community. *Id.* at 348.

If, under Texas law, "[a] fact or circumstance, other than facts of record or possession visible and exclusive, *will not put a purchaser on inquiry* unless it is a fact or circumstance that he knows or should know," *id.* at 351(emphasis added), then a fact or circumstance (such as the affiliation between Twentieth Century and Landmark Chevrolet), other than facts of record or possession, *will not relieve a purchaser from inquiry* unless it is a fact or circumstance that he knows or should know.  Therefore, the Trustee's argument that it "was sufficiently related to Landmark Chevrolet to lead a prospective purchaser to believe that there was no contradiction between Twentieth Century's record ownership and Landmark Chevrolet's possession as a tenant" is without merit.  (Doc. 14 at 13.)

purchaser in this case is charged with constructive notice of the rights of the landlord, Landmark North, through Landmark North's tenant, Landmark Chevrolet.

It makes no difference, as HSBC correctly points out, "that the party in possession is not the party claiming to have rights in the property, as the tenant and landlord are treated the same with respect to the notice that Texas law imputes . . . ."  (Doc. 9 at 25.) Had a hypothetical purchaser for value inquired as to Landmark Chevrolet's rights in the subject property, it would have discovered Landmark North's interest as the landlord under the written lease agreement between Landmark Chevrolet and Landmark North. (*See* doc. 9 at 25 (citing B.C. Doc. 92-21 at 24).)  Therefore, the court concludes that the bankruptcy court erred in finding that "Landmark Chevrolet's possession of the subject property was not unequivocal because the dealership's possession of the property would have been compatible with Twentieth Century's title record ownership representations." (Doc. 1-3 at 14-15).

On appeal, the Trustee argues that *Madison v. Gordon,* 39 S.W.3d 604, and *Battros v. Battros,* 1992 WL 695898*,* "provide strong support for the Bankruptcy Court's opinion that a hypothetical purchaser would not have been on inquiry notice of HSBC's claim." (Doc. 14 at 14.)   *Madison* and *Battros*, however, are distinguishable from the instant action in several key respects.

In *Madison*, Ronald Gordon ("Gordon") owned a four-plex rental property and lived in one unit while renting the others.  39 S.W.3d at 605.  In 1991, Gordon was

arrested and placed in jail.  To obtain a bail bond, Gordon signed a warranty deed

conveying the four-plex to a bail bondsman, which the bondsman properly recorded.  *Id.*

Gordon simultaneously retained a lawyer, Alton Williams ("Williams"), to represent him.

A year later, the bondsman conveyed the property to Williams, who recorded the deed.

Thereafter, Williams was "in need of cash and unable to secure a loan," so his fiancée,

Anna Madison ("Madison"), secured a bank loan and purchased the four-plex from

Williams.  *Id.*  The bank recorded the note and the conveyance.  Gordon, who lived on the

property throughout the conveyances to Williams and then to Gordon, later sued the

bondsman, Madison, Williams, and the bank to recover title to the four-plex.   Gordon

argued that Madison could not attain "bona fide purchaser" status because she had actual

and/or constructive notice of his claim to the rental property.  *Id.*  Madison, on the other

hand, argued that she was a bona fide purchaser for value without actual or constructive

notice of Gordon's claimed interest.  Madison claimed that Williams assured her of his

ownership in the four-plex and told her nothing about Gordon or his continued residence

in one of the four units. *Id.*   The trial court granted summary judgment in favor of

Madison. The Texas Court of Appeals reversed and concluded that Madison, by virtue of

Gordon's possession, was on constructive notice of Gordon's claim.  *See Gordon v.*

*Madison*, 9 S.W.3d 476, 479 (Tex. App. 2000).  Madison appealed to the Supreme Court

of Texas.

On appeal, the Supreme Court of Texas reversed and rendered judgment in favor

17

of Madison.  39 S.W.3d at 607.  The court held that Gordon's possession in one unit of

the multi-family rental property was not sufficiently exclusive or unequivocal to provide

constructive notice of his ownership claim.  *Id.*  The court's holding rested on the fact that

Gordon was one of four tenants residing on the property and that there was no outward

indication that he would later claim title.  The court's holding also rested on the fact that

Madison, the purchaser, had direct dealings with the record title owner (her fiancée), who

assured her of his ownership of the multi-unit rental property.  *Id.* at 605-07.  The court

thus concluded that Gordon's possession was not unequivocal because it was "compatible

with another's ownership assertion."  *Id.* at 607.  In so holding, however, the court did not

question several earlier Texas cases that had held possession was sufficient to place a

purchaser on constructive notice stating: "[I]n each of these cases, the occupant lived in a

single-unit dwelling. Arguably, this sole possession of property implicates visibility,

openness, exclusivity, and unequivocality."  *Id.*

     Here, unlike in *Madison*, the subject property is not a multi-unit rental property.

Instead, it is an open and visible automobile dealership with a single tenant, Landmark

Chevrolet.  Further, there is no evidence that a hypothetical bona fide purchaser for value

would have any direct dealings with Twentieth Century, the record title owner.  The

Trustee presented no evidence that a hypothetical bona fide purchaser for value, like the

purchaser in *Madison*, would receive any assurances of ownership from Twentieth

Century.  Rather, the evidence supports the conclusion that Landmark Chevrolet's

exclusive and unequivocal possession was similar to the possession of the single-unit dwelling cases discussed in *Madison*. *See id.* Therefore, the Trustee's reliance on *Madison* is misplaced.

The Trustee's reliance on *Battros* is even more unavailing. In *Battros*, Mitchell Battros ("Mitchell") and his wife owned a 65 acre tract of land in Texas. Mitchell and his wife used the property as a weekend retreat. Around 1983, Mitchell hired Maria Pavila ("Pavila") to live on, and take care of, the property. In 1987, Mitchell's daughter, Stacy, graduated from college and on her birthday that summer, Mitchell told her he was giving her the land. Mitchell also told Pavila that from that point forward Pavila would be working for Stacy. A few weeks later, Mitchell gave Stacy a deed to the property, which Stacy gave back to Mitchell to record on her behalf. The deed was not properly recorded. Meanwhile, Stacy used the property as a weekend getaway in the same manner as Mitchell had. Pavila continued to be present at the property and Mitchell continued to pay Pavila as he had before. In 1989, however, Mitchell filed for bankruptcy. After the bankruptcy, Stacy or Mitchell discovered the improper filing of the deed and properly recorded it. 1992 WL 695898 at *1.

After a trial, the United States Bankruptcy Court for the Western District of Texas, interpreting Texas law, found in favor of the trustee, holding that "the conveyances could be avoided under § 544(a)(3) as one against which a bona fide purchaser for value would prevail." *Id.* The ruling relied in part "on the court's determination that Stacy's claim to

19

ownership was not accompanied by acts of actual, open, notorious, exclusive possession which would place a bona fide purchaser on notice of her claim of ownership." *Id.* Stacy moved for rehearing.

On rehearing, Stacy argued that Pavila was her tenant and that the presence of a tenant living on the property on a daily basis triggers the requisite duty of inquiry under Texas law, such that the trustee could not be a bona fide purchaser without notice pursuant to § 544(a)(3). The court disagreed. *Id.* at *2. The issue before the court was whether the possessor's (Pavila) presence on the property was visible, open, exclusive, and unequivocal or whether the possessor's presence on the property was consistent with Mitchell's record title. In that regard, the court stated:

> The evidence is less than persuasive that Maria Pavila was even Stacy Battros' employee or tenant as of the date of the filing of the bankruptcy in 1989. Mitchell Battros continued to pay her salary even after the transfer of the property. Maria had always lived there rent-free, even before the change of "bosses." Stacy has never paid Maria a salary and does not pay her one now. She permits Maria to live on the property rent-free, but that is no different than the arrangement Maria has always had with the Battros family. There is not now and never has been a lease arrangement. Ms. Pavila's true role (and the obvious explanation for her presence on the property) is and always has been that of caretaker. In other words, she has the same understanding with Stacy as she says she had with Mitchell-she was there to make sure the property was not vandalized and to ward off trespassers, as well as to keep up the premises. Her role changed not a wit when Mitchell gave the land to his daughter. From the point of view of an outsider, then, nothing changed.

*Id.* The court also relied on "the fact that the mailbox at the end of the lane said "M. Battros," which the court found "only undermines that much more thoroughly the

contention that her presence was somehow notice of an ownership adverse to Mitchell Battros." *Id.* at *3.  Moreover, the court found that it did not know, but could only guess, what Pavila would have said if someone went up to the door in May 1989 and asked Pavila who she worked for. *Id.*

In this case, relying on *Battros*, the bankruptcy court similarly concluded that "[f]rom the point of view of an outsider, then, nothing changed" after the unrecorded transfer of the subject property.  (Doc. 1-3 at 15.)  However, this statement from *Battros* must be read in the context of that decision.  The court's discussion in *Battros* begins with the premise, though it was not stated with specificity, that Pavila's presence was consistent at some time with Mitchell's assertions of ownership.  The same cannot be said here since Landmark Chevrolet's possession of the subject property was unequivocal, to the exclusion of Twentieth Century.  As recognized by the Trustee and the bankruptcy court, Landmark Chevrolet's operation of the property as an automobile dealership never materially changed after it first began leasing the property from Twentieth Century in 1985 until the filing of BHE's bankruptcy petition.  At no time was Landmark Chevrolet's ownership, from the perspective of an outsider, attributable to Twentieth Century. Moreover, *Battros* is further distinguishable because Pavila was a caretaker, not a tenant, and there was no written lease in that case, as there is here between Landmark North and Landmark Chevrolet.  Finally, contrary to the Trustee's assertion that "a hypothetical purchaser [in this case] easily could have been confused in making inquiry concerning the

21

[s]ubject [p]roperty," (doc. 14 at 18), the court can say here what the *Battros* court could

not - that is, "that the Trustee, upon making inquiry, would certainly [have] arrive[d] at

the truth." *Battros*, 1992 WL 695898 at *3 (citation omitted).  In other words, if a

purchaser inquired of the tenant, Landmark Chevrolet, such purchaser would have learned

of the change of ownership, or at the very least, of Landmark North's interest in the

subject property.  Therefore, put in the proper context, the court finds that the bankruptcy

court and the Trustee's analogy to *Battros* is misplaced.

     While it is true that the character and extent of Landmark Chevrolet's possession

of the subject property remained the same after the unrecorded transfer, this does not

defeat constructive notice under Texas Law.  In its statement of disagreement with the

bankruptcy court's tentative Memorandum Opinion, HSBC relied on a line of cases

setting forth the doctrine of attornment.  (B.C. Doc. 111.)  Under the attornment cases,

HSBC argued that the mere attornment of a grantor's tenant to the grantee without any

apparent change in the possession or occupancy of the land is constructive notice to

prospective purchasers of the grantee's interest under an unrecorded deed.  (*Id.*)  HSBC

maintained that, under the doctrine of attornment, Landmark Chevrolet's continued

possession of the subject property would have triggered constructive notice to a

hypothetical purchaser of Landmark North's interest under the unrecorded Warranty

Deed.  (*Id.*)  On appeal, HSBC, as it did below, relies on *Mainwarring v. Templeman*,

1879 WL 7660 (Tex. 1879), for "the proposition that the constructive notice inquiry

remains unchanged where a tenant attorns to a new owner and the character and extent of the tenant's possession remains the same as under the previous owner."  (Doc. 9 at 32-33.)  The bankruptcy court recognized the doctrine of attornment, but found that the doctrine did "not change current Texas law."  (Doc. 1-3 at 4.)  The bankruptcy court further found "the attornment cases relied upon by HSBC . . . distinguishable from the facts of this case in which the court is concerned with the rights of a hypothetical bona fide purchaser because the cases relied upon by HSBC do not involve traditional purchasers for value, much less hypothetical purchasers under § 544(a)(3) of the Bankruptcy Code.  Instead, the cases relied upon by HSBC involve purchasers at execution sales who took nothing more than the rights of the intervening judgment creditor under Texas Law."  (*Id.*)

This court finds that the bankruptcy court erred in distinguishing *Mainwarring* and its progeny because under Texas law, "[t]he purchaser of property sold under execution is considered to be an innocent purchaser without notice, if the purchaser would have been considered an innocent purchase[r] without notice had the sale been made voluntarily and in person by the defendant." *Cnty. of Burleson v. General Electric Capital Corp.*, 831 S.W.2d 54, 58-59 (Tex. App. 1992) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 34.046 (Vernon 1986)).  "A purchaser at an execution sale stands on the same basis as he would had he purchased the property at a voluntary sale by the owner." *Cnty. of Burleson*, 831 S.W.2d at 59 (citation omitted).  In *Blum v. Schwartz*, 20 S.W. 54 (Tex. 1892), the Texas

Supreme Court stated that "[w]here, as in this case, the rights of parties are to be determined by the proper construction of the registration laws, two classes are protected, - creditors who, without notice, have fixed their liens; and subsequent purchasers for a valuable consideration, without notice." *Id.* at 56.  Therefore, the holding in *Mainwarring* applies to the facts of this case.

In *Mainwarring*, 1879 WL 7660, the Texas Supreme Court found that a tenant's possession of real estate constituted constructive notice, as to third parties, of the title of the landlord. Atcheson, the judgment debtor, sold 259 acres to Mainwarring in December of 1873, but Mainwarring did not record his deed until June of 1874.  Before the sale, Atcheson was in possession of the property through a tenant.  Immediately after the sale, the tenant became Mainwarring's tenant under a written lease and continued to occupy the land until after the date of a judgment taken against Atcheson.  Templeman subsequently purchased the property at an execution sale under the intervening judgment dated February 13, 1874. Templeman then sued Mainwarring to quiet title and the court rendered judgment in favor of Mainwarring, finding Mainwarring to be in possession of the property through his tenant at the rendition of the judgment.  The tenant's possession of the property, the character and extent of which did not change following the unrecorded transfer, was constructive notice to Templeman of Mainwarring's interest in the property.  *Id.* at *4.

On appeal, the Texas Supreme Court concluded that where possession of the

tenant is open and definite, the mere attornment of the tenant of the grantor to the grantee,

without any apparent change in the possession or occupancy of the land, constituted

constructive notice of the prior unrecorded conveyance to Mainwarring.  Specifically, the

court held:

> [U]nder our statute the rule has become settled, that possession, either in
> person or by tenant, is equivalent to registration.
>
> If the possession be sufficiently *open and definite*, whether it be in person
> or by tenant, it is incumbent on one who undertakes to acquire rights in the
> land to inform himself of the rights of the occupant, or of the landlord of the
> occupant. The purchaser should not be excused from inquiry unless there be
> something more to mislead him than his own assumption that parties
> occupy under the same right as formerly. The judgment as to the two
> hundred and fifty-nine acre tract will also be affirmed.

*Id.* at 6 (emphasis added).

In *Duncan v. Matula*, 26 S.W. 638 (Tex. Civ. App. 1894), the Texas Civil Court of

Appeals held that where a landowner, who was in possession of property by a tenant,

conveyed the land to the grantee and the tenant attorned to the grantee, and the deed was

not recorded, the tenant's possession was constructive notice of the grantee's title to one

who bought the property at a subsequent execution sale.  Prior to the conveyance, the

landowner was in possession of the property through a tenant.  Within days after the sale,

the grantee rented the house to the same tenant.  Subsequently, the plaintiff, Duncan,

purchased the property at an execution sale before the grantee recorded the deed to the

property.  The *Duncan* court found that "mere attornment of the tenants of the grantor to

the grantee, without any apparent change or occupancy of the land, was constructive

notice of the prior unrecorded conveyance."  *Id.* at 638; *see also Simmons v. Eakin*, 54 S.W.2d 1045, 1046 (Tex. Civ. App. 1932)("In short, the settled rule in Texas is that possession, either in person or by a tenant, is equivalent to registration.")(citation omitted).

Given that, under Texas law, "[t]he purchaser of property sold under execution is considered to be an innocent purchaser without notice, if the purchaser would have been considered an innocent purchase[r] without notice had the sale been made voluntarily and in person by the defendant," *Cnty. of Burleson,* 831 S.W.2d at 58-59, the court finds that it is immaterial that *Mainwarring* and *Duncan* involved a subsequent purchase at an execution sale, as opposed to a voluntary sale or otherwise.   Although the *Mainwarring* court did not have the benefit of the "visible, open, exclusive, and unequivocal" framework articulated in *Strong*, 98 S.W.2d at 350, the "open and definite" analysis applied in *Mainwarring* accomplishes the same result and thus *Mainwarring* and *Duncan* are entirely consistent with "current Texas law."   Further support for this court's holding is found in the Texas Court of Appeals' recent decision in *Apex v. Fin. Corp. v. Garza*, 155 S.W.3d 230 (Tex. App. 2004), distinguished by the bankruptcy court.

*Apex* concerned the rights and interests of several parties as related to certain real property located in Dallas, Texas.  On July 23, 2007, Terry LaCrosse ("LaCrosse") signed a quitclaim deed to Garza of the property at the center of the dispute.  The quitclaim deed was not recorded until April 10, 2000.  Prior to that recording, on November 30, 2009,

26

Verizon Directories Corporation ("Verizon") obtained a money judgment against

LaCrosse in a separate lawsuit.  Although it was unclear when Verizon recorded its

abstract of judgment, Verizon had a writ of execution issued and levied on the property

and a sheriff's sale was conducted on April 4, 2000. Apex was the highest bidder at the

sheriff's sale, paid valuable consideration, and received a sheriff's deed to the property.

Apex later evicted Garza from the property.  *Id.* at 233.

Garza filed suit against Apex seeking a declaratory judgment to determine the

rights and interests of the parties to the property.  After a bench trial, the trial court,

without voiding the sheriff's deed, declared that Garza had a superior right to the property

as against Apex and that Apex had no right, title, or interest in the property.  *Id.*  The trial

court concluded that Apex had constructive notice of Garza's adverse claim because

Garza's possession of the property was visible, open, and exclusive.  Apex appealed.  *Id.*

at 233-35.

On appeal, Apex claimed it was a bona fide purchaser of the property without

notice of Garza's claim under the unrecorded quitclaim deed.   Apex argued that, as a

matter of law, Garza's possession was not sufficient to give rise to constructive notice of

Garza's claim of ownership.  The court disagreed and determined that Garza's possession

was visible, open, and exclusive under the following facts:

> There is evidence in the record that Garza bought the property in 1997 and
> thereafter, until evicted by Apex, used the property for his trucking business
> on a daily basis. Garza had signs on his trucks identifying his business, A-
> Garza Trucking. He parked his trucks, did mechanical work on them, and

> washed them at the property. The property is located in an industrial or warehouse area and has one building on it. Garza used the building as the office for his business and had someone working in the office Monday through Friday, and sometimes on Saturday. The holder of an outstanding lien on the property testified that Garza's trucks, with signs identifying the business, were on the property all the time. He said a person could see that Garza was doing business there. We conclude the evidence supports the conclusion that Garza's possession was open and visible.

*Id.* at 235. The court continued and discussed Apex's assertion that Garza's possession was equivocal and thus insufficient to constitute constructive notice.  *See id.*  In doing so, the court, as this court does, distinguished *Madison*.  In a passage quoted by the bankruptcy court below, the *Apex* court stated:

> In *Madison,* in which the supreme court held that possession of the property was equivocal, the purchaser had direct dealings with the record title owner, her fiancé, who assured her of his ownership of the multi-unit rental property. *Madison,* 39 S.W.3d at 605. The supreme court concluded the possession was not unequivocal because it was "compatible with another's ownership assertion." *Id.* at 607. However, the property here is not a multi-unit rental property like the property in *Madison.* Further, there is no evidence that Apex had any direct dealings with LaCrosse, the record title owner. Apex presented no evidence that it received any assurances of ownership from LaCrosse. Therefore, Garza's possession was not compatible with another's assertion of ownership.

*Id.*  On that basis, the *Apex* court affirmed the trial court's judgment in favor of Garza and against Apex.

The Trustee and bankruptcy court distinguish *Apex* on the same ground they distinguish *Storm Family Partners* - that is, because "in *Apex* the property was occupied by the same party who claimed in the unrecorded interest in same."  (Doc. 1-3 at 12.)  Again, to be clear, the court is of the opinion that such a distinction is immaterial given

that, as discussed *supra*,  possession of land by tenant constitutes notice of the landlord's right in the land.  Moreover, the similarity between the facts in *Apex* and the facts of this case confirms that *Madison* is distinguishable from the instant action and also that Landmark Chevrolet's possession was sufficient to constitute constructive notice to a hypothetical purchaser, despite the fact that the character and extent of Landmark Chevrolet's possession remained unchanged following the unrecorded transfer from Twentieth Century to Landmark North.   Furthermore, *Mainwarring*, *Duncan*, and *Apex* all recognize that the same constructive notice inquiry applies to determine the priority of a purchaser, judgment or otherwise, as related to an unrecorded conveyance, unless the judgment creditor or lien holder relies on an equitable right, which is the point addressed in *First State Bank of Amarillo v. Jones*, 183 S.W. 874 (Tex. 1916).

The bankruptcy court, relying on *First State Bank of Amarillo v. Jones*, found that judgment creditors and purchasers at execution sales are in a different attitude than bona fide purchasers for value because "[a] hypothetical purchaser is sold property by someone who no longer owns it and is misled into believing that the property belongs to that person despite the existence of a visible tenant on the property." (*See* doc. 1-3 at 6-7 ("[T]he Supreme Court of Texas [has] explained that a judgment creditor is not a bona fide purchaser.").)

In *First State Bank of Amarillo*, a bank mistakenly executed a release of a deed of trust creating an interest in a debtor's land when only part of the underlying note had

29

actually been paid.  The Texas Supreme Court held that, under the common law of Texas,

even though there was a valid release document, the release did not effectively extinguish

the debt because the evidence conclusively demonstrated that the defendants had not

actually intended to release the debt and that such release was the product of mutual

mistake.  183 S.W. at 875-78.  The bankruptcy court relied on the following passage from

*First State Bank of Amarillo*:

> A judgment lien holder is not in the same attitude as an innocent purchaser
> for value without notice. The latter has expended money in good faith to the
> amount of the purchase price of the land, and is justly entitled to be held
> harmless. It is right that the loss under such circumstances should be visited
> upon the landowner whose negligence, in failing to give notice through the
> deed records of his ownership, occasioned the loss, rather than it should fall
> upon the innocent purchaser who was without fault. The judgment lien
> holder is in a different attitude. He is not in any sense an innocent
> purchaser. If his lien fails to attach, he loses nothing. His judgment still
> remains unimpaired in its full amount. In such a case, even though the
> owner of the land has been negligent in failing to provide a correct record
> notice of his title, still his negligence has not resulted in injury to the
> judgment creditor.

(Doc. 1-3 at 6 (citing *First State Bank of Amarillo*, 183 S.W. at 876).)

As HSBC correctly points out, "a close reading of *First State Bank of Amarillo* . . .

reveals that the phrase 'different attitude' is used in the context of determining the priority

of a judgment lien as against an equitable interest."  (Doc. 9 at 45 (citations omitted).)

Immediately following the above passage, the *First State Bank of Amarillo* court stated:

> Under such circumstances, there can be no good reason for any other rule
> than that his lien attaches to no more than the interest actually owned in the
> land by the judgment debtor. This was the common-law rule, and it has
> been consistently followed by this court. If the recital of full payment of the

note held by the bank against Roberts was occasioned by a mutual mistake, its correction was an equitable right to which the bank was entitled. *This equitable right was not controlled by our registration laws, but was superior thereto.*

183 S.W. at 876-77 (emphasis added)(citations omitted). After analyzing the evidence in the case, which indicated unambiguously that the recital of full payment had been a mistake, the court continued:

> Under such circumstances, even a person claiming as an innocent purchaser would fail in his plea, since a mistake in the release is apparent on its face when read in connection with the deed of trust. After reading the release and the deed of trust, the duty would when devolve upon him to prosecute an inquiry as to the nature of the mistake. The prosecution of this inquiry would lead him directly to Roberts, whose debt was involved, and to the president of the bank, who executed the release. From them he would learn that the mistake was in reciting full payment of the note. This would defeat his plea.

*Id.* at 877.

That the *First State Bank of Amarillo* court analyzed the issue as if the claimant was an innocent purchaser for value after previously stating that innocent purchaser's for value are in a different attitude than judgment creditors demonstrates that the case turned not on the whether the claimant was a judgment creditor or an bona fide purchaser for value, but instead the fact that the evidence conclusively established that First State Bank of Amarillo had an equitable right *under the common law of Texas* to recovery arising from the mistaken release.  As recognized by the United States District Court for the Northern District of Texas in *United States v. FDIC*, 1987 WL 43096 (N.D. Tex. July 20, 1987), TEX. PROP. CODE ANN. § 13.001 and its predecessor "eliminated the common law

31

distinction between judgment creditors and purchasers for value; it provided judgment

creditors with the same rights and duties as were previously held only by bona fide

purchasers."  1987 WL 43096 at *4 (citing *Diltz v. Dodson*, 207 S.W. 356, 358 (Tex. Civ.

App. 1918)); *see also Gaona v. Gonzales*, 997 S.W.2d 784, 786 (Tex. App. 1999) ("In

partial abrogation of the common law, the recording statute [set forth in TEX. PROP. CODE

ANN. § 13.001] provides that an unrecorded conveyance of real property is void as to a

judgment creditor without notice.") (citations and footnote omitted).[3]  Therefore, *First

State Bank of Amarillo*, decided under the partially abrogated common law of Texas, does

not support the conclusion that *Mainwarring* and its progeny are inapposite to the instant

action.

  In sum, the attornment of the Landmark Chevrolet as Twentieth Century's tenant

to Landmark North's tenant, without any apparent change in the possession or occupancy

of the subject property, imputes notice of Landmark North's interest as the landlord in the

subject property to a hypothetical bona fide purchaser for value because Landmark

------

  [3] TEX. PROP. CODE ANN. § 13.001(a), which is the Texas recording statute, provides:

  (a) A conveyance of real property or an interest in real property or a mortgage or
  deed of trust is void as to **a creditor or to a subsequent purchaser for a
  valuable consideration** without notice unless the instrument has been
  acknowledged, sworn to, or proved and filed for record as required by law.

*Id.* (emphasis added).

Chevrolet's possession of the subject property was visible, open, exclusive, and unequivocal and not consistent with Twentieth Century's record ownership assertions. Therefore, the trustee is not entitled to avoid the transfer pursuant to § 544(a)(3) and the judgment of the bankruptcy court is due to be reversed.  Because HSBC is entitled to summary judgment on the claim brought pursuant to § 544(a)(3), the court need not reach the additional errors assigned to the decision below.

### IV.  CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is due to be reversed and the case remanded for further proceedings not inconsistent with this Memorandum Opinion.  An Order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE**, this the 31st day of March, 2011.

*Sharon Lovelace Blackburn*
_____
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE